## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
### File No.: 5:12-CR-274-D-1

| | |
|---|---|
| UNITED STATES OF AMERICA, | \| MEMORANDUM OF LAW |
| | \| IN SUPPORT OF DEFENDANT'S |
| vs. | \| PRO SE MOTION FOR |
| | \| COMPASSIONATE RELEASE/ |
| ANTHONY WAYNE WIGGINS | \| SENTENCE REDUCTION |
| _____ | \| |

ANTHONY WAYNE WIGGINS, by and through counsel, submits the following memorandum to aid the Court in deciding Mr. Wiggins's pro se Motion for Compassionate Release/Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) that he filed on 24 March 2022 (DE 403).


Jurisdiction and Authority to Reduce Sentence

The district court's authority to grant compassionate release or a sentence reduction is found at 18 U.S.C. § 3582(c).  A defendant may qualify for a modification in his sentence due to certain age, health, or family circumstance factors.  18 U.S.C. § 3582(c)(1)(A).  Before the passage of the First Step Act on 21 December 2018 (see Pub. L. 115-391, 132 Stat. 5194), the discretion to file a motion for compassionate release under § 3582(c)(l)(A) rested entirely with the Director of the Bureau of Prisons (BOP).  After 21 December 2018, Section 603 of the First Step Act amended 18 U.S.C. § 3582(c)(l)(A) to provide that a

defendant may request compassionate release from the sentencing court after exhausting his administrative remedies within the prison. Compassionate release may be available to defendants where (1) extraordinary and compelling circumstances warrant a reduction in the sentence or (2) a defendant who is serving a sentence imposed pursuant to 18 U.S.C. § 3559(c) is at least seventy years old and has served at least thirty years in prison. 18 U.S.C. § 3582(c)(l)(A)(i)-(ii). Mr. Wiggins is moving under the first category: extraordinary and compelling circumstances.

Normally, a reduction under either section must be consistent with applicable policy statements issued by the United States Sentencing Commission. *Id*. at (c)(l)(A). When reducing a term of imprisonment via compassionate release, a court "may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment[.]" *Id*. The commentary to § 1B1.13 of the United States Sentencing Commission's advisory Guidelines Manuel provides criteria for determining whether extraordinary and compelling circumstances exist. U.S.S.G. § 1B1.13, comment n.1. These criteria generally concern the age, medical condition, or family circumstances of the defendant. *Id*.

However, this section of the Guidelines has not been updated to reflect the changes of the First Step Act. *See United States v. McCoy*, 981 F.3d 271,

275 (4th Cir. 2020) (the Sentencing Commission "has yet to issue a policy statement that applies to motions filed by defendants under the recently amended § 3582(c)(1)(A).") While 18 U.S.C. § 3582(c)(1)(A) requires that sentence reductions be consistent with "applicable policy statements," where there currently exists no applicable policy statement, "§ 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* at 281. Therefore, district courts may consider "*any* extraordinary and compelling reason for release that a defendant might raise." *Id*. (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2nd Cir. 2020)) (emphasis in the original).

In addition to considering whether extraordinary and compelling circumstances are present, a court must also consider the 18 U.S.C. § 3553(a) sentencing factors and determine whether the defendant is a danger to the safety of another person or the community as provided in 18 U.S.C. § 3142(g). U.S.S.G. § lBl.13.

In sum, Mr. Wiggins must show (1) exhaustion of administrative remedies, (2) the existence of extraordinary and compelling circumstances, and (3) justification under the 18 U.S.C. § 3553(a) sentencing factors.

Background

Mr. Wiggins and four codefendants were named in an 11-count superseding indictment filed on 9 April 2013 charging Mr. Wiggins with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine (Count One), possession with intent to distribute 50 grams or more of crack cocaine on 30 June 2012 (Count Six), and possession of a firearm by a felon (Count Seven) (DE 46). Mr. Wiggins elected to go to trial and on 13 March 2014, the jury found him guilty of all three counts (DE 180-96). On 3 September 2014, the Court sentenced him to life in prison on Counts One and Six (concurrent) and 120 months in prison on Count Seven (consecutive) (DE 269-70). The Court also imposed a supervised release term of 10 years (DE 269-70). Mr. Wiggins subsequently filed multiple post-conviction actions, all of which were denied (DE 273-379). He filed his motion for compassionate release/sentence reduction on 24 March 2022 (DE 403). The undersigned was appointed and filed an appearance on 30 March 2022 (DE 405).

Exhaustion of Administrative Remedies

A defendant must have "exhausted all administrative rights to appeal a failure of the BOP Director to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(l)(A). On an unknown date, Mr. Wiggins submitted a request for compassionate release/sentence reduction to his warden based on the First Step Act's changes in the sentencing laws for those convicted and sentenced under 18 U.S.C. § 841 (DE 403-1 pp 1-4). On 7 May 2021, the warden denied his request (DE 403-1 p 5). He appealed that decision on 21 May 2021 (DE 403-1 pp 6-7). On 8 June 2021, the warden denied his appeal (DE 403-1 p 8). On 13 June 2021, the Regional Director denied a further appeal (DE 403-1 p 10). Mr. Wiggins submitted additional appeals in June and August 2021 (DE 403-1 pp 11-15). The Administrator of National Inmate Appeals denied his further appeals on 1 October 2021 (DE 403-1 pp 16-17). Mr. Wiggins has thus exhausted his administrative remedies to date and his motion for compassionate release/sentence reduction is now properly before the Court.

Extraordinary and Compelling Circumstances

The Guidelines provide four categories of circumstances that are extraordinary and compelling. The first concerns the medical condition of the defendant (section A). The second concerns the age of the defendant (section B). The third concerns the family circumstances of the defendant (section C). The fourth is a catchall provision, which permits the BOP Director to identify

other extraordinary circumstances that are not set out by the Guidelines (section

D). U.S.S.G. § lBl.13, comment n.1 (A)-(D). Mr. Wiggins is moving under the

fourth, catchall category. More specifically, he is relying on changes in the law

since he was sentenced.

On 10 March 2014, the day Mr. Wiggins's trial started, the Government

filed notices to seek an enhanced penalty on Counts One and Six under 21

U.S.C. § 851, which elevates the statutory ranges on federal felony drug

convictions if the defendant has prior felony drug convictions (DE 177-78).

Specifically, it elevated the Count One (conspiracy) punishment range from 10

years to life in prison to mandatory life in prison. 21 U.S.C. § 841(b)(1)(A)

(2013). It elevated the Count Six (crack cocaine possession on 30 June 2012)

punishment range from 5 years to 40 years in prison to 10 years to life in prison.

21 U.S.C. § 841(b)(1)(B) (2013). The only requirement for these enhancements

was that Mr. Wiggins have prior felony drug convictions or prior felony crime

of violence convictions. *See id*.

In December 2018, Section 401(a) of the First Step Act amended these

laws in two significant ways. First, it reduced the 21 U.S.C. § 841(b)(1)(A)

enhanced penalty for two or more prior drug or crime of violence convictions

from mandatory life in prison to not less than 25 years in prison. Second, it

required that the prior convictions be a "serious drug felony" or a "serious

violent felony" instead of any drug felony or crime of violence felony. Section 401(a)(1) of the First Step Act pointed to 18 U.S.C. § 924(e)(2) to define a serious drug felony: a violation of the Controlled Substances Act or a violation of a state drug law that carried a maximum sentence of 10 years or more in prison. The offender must have served a prison term of more than 12 months and his sentence must have ended within 15 years of commencement of the instant federal drug offense. The First Step Act defined a serious violent felony as an offense described in 18 U.S.C. § 3559(c)(2) for which the offender served more than 12 months in prison and any felony offense that was or would be a violation of 18 U.S.C. § 113 if it were committed in a federal jurisdiction and the offender served more than 12 months in prison.

The instant federal offense began for Mr. Wiggins in September 2011 according to the presentence report (DE 212 p 8). Thus, his prior drug conviction sentences must have concluded after September 1996 to be within 15 years and count as serious drug felonies for § 851 enhancement purposes after 2018. The drug offense convictions listed in paragraphs 42 through 44 of the presentence report do not count because those sentences concluded in 1992. The drug offense conviction shown in paragraph 45 of the presentence report is the only possible conviction in Mr. Wiggins's criminal history that could meet the definition of serious drug felony. He was convicted of cocaine possession

and received a five-year prison sentence that concluded on 17 May 2002. The question is what was the maximum possible sentence he could have received. According to the undersigned's research, cocaine possession is a Class I felony in North Carolina that carried a maximum possible punishment of five years in prison back in 1994 (Exh A p 2). *See* nccriminallaw.sog.unc.edu/fair-sentencing-in-a-nutshell/ (posted 24 July 2014). Since five years is less than 10 years and a maximum of 10 years in prison is required to meet the definition of a serious drug felony under the current law, Mr. Wiggins has no prior serious drug felony convictions on which the Government could have relied to seek an enhanced penalty under § 851 had Mr. Wiggins been prosecuted after December 2018. There are no other felony drug convictions in Mr. Wiggins's criminal history to examine for § 851 enhancement purposes (DE 212 pp 9-13).

Turning to serious violent felonies, the convictions for breaking or entering and larceny after breaking or entering listed in paragraphs 46 and 47 of the presentence report all carried maximum sentences of 12 months exactly (DE 212 pp 11-12). Thus, Mr. Wiggins could not have served more than 12 months on any of those sentences. In turn, those convictions do not meet the First Step Act's definition of serious violent felony because he did not serve more than 12 months in prison on any of them. The Government would not have been able to

rely on any prior convictions of violence to support a § 851 enhancement for Mr. Wiggins's federal drug convictions after 2018.

In sum, the Government could not have sought a § 851 enhancement of Mr. Wiggins's drug conviction sentences had he been charged and prosecuted after December 2018. His statutory sentencing range on Count One would have been 10 years to life in prison and his statutory sentencing range on Count Six would have been 5 to 40 years in prison. He would not have been subject to a mandatory life in prison sentence. His Guidelines range was 235 months (19.6 years) to 293 months (24.4 years), which is within the statutory range of both drug convictions.

It is true that at the sentencing hearing the Court announced it would impose a life in prison sentence as an alternative variant sentence had it miscalculated the Guidelines range (DE 293 p 16). The Court stated it would do so under the 18 U.S.C. § 35553(a) sentencing factors (DE 293 p 16). However, the Court was also under the impression it had to impose a life in prison sentence (DE 293 p 14). The Court noted that 21 U.S.C. § 851 was designed to protect society from people like Mr. Wiggins (DE 293 p 14). Thus, it is not entirely clear the Court would have imposed a life in prison sentence had it not been mandatory. To do so would have been an above-Guidelines range sentence had a § 851 enhancement been unavailable. The Court's

Statement of Reasons shows it imposed a mandatory minimum sentence and that the sentence was within the Guidelines range and the Court found no reason to depart (SOR). The Statement of Reasons does not contain language that the Court would have imposed an above-Guidelines range sentence as an alternative variant (SOR) and neither does the written judgment (DE 270).

In Mr. Wiggins's case, the changes in the law since he was sentenced constitute "extraordinary and compelling reasons" in support of a sentence reduction. Had the current law been in effect in 2014, Mr. Wiggins likely would have received less than a life in prison sentence.

Mr. Wiggins's request for a sentence reduction based on a change in the law since his sentencing is not without precedent. The *McKoy* case is an example. *McCoy*, 981 F.3d at 281. Another Court in this district has also relied on a change in law since sentencing to grant a sentence reduction. *See United States v. Stuart*, No. 5:92-CR-114-BR-3, 2020 U.S. Dist. LEXIS 231413, WL 7232074 (E.D.N.C. December 8, 2020). Judge Britt's language from *Stuart* is instructive here. He wrote as follows:

> It is important to emphasize what the court is, and is not, doing. Under § 3582(c)(1)(A), the court is not correcting a defendant's sentence or relitigating any aspect of it. At the time of defendant's sentencing, the court correctly applied the applicable law. That law has since changed. The court may consider changes in sentencing law—even nonretroactive ones—in assessing whether a defendant has

shown extraordinary and compelling reasons warrant a
reduction in his sentence.

*Id.* at *6-8 (citing *McKoy*, 981 F.3d at 278).

Numerous other courts across the country are recognizing this somber
reality for similarly-situated defendants and, in turn, agreeing to reduce their
sentences. *See, e.g., United States v. Clausen*, No. CR 00-291-2, 2020 WL
4260795, at *8 (E.D. Pa. July 24, 2020) (reduction warranted, in part, based on
the defendant's "'off the charts' sentence—which is longer than Congress now
deems warranted"); *United States v. Clark*, No. 11-CR-30-2-JPS, 2020 WL
4260824, at *2 (E.D. Wis. July 23, 2020) (collecting cases in which "courts
have granted compassionate relief motions to certain individuals who would not
have been subject to the § 924(c) 25-year stacking provision had they been
sentenced today"); *United States v. Wise*, No. 5:98-CR-00138, 2020 WL
4251007, at *4 (N.D. Ohio June 25, 2020) (finding that the defendant, "if
sentenced today for the same conduct, would likely receive a dramatically
lower sentence than the one he is currently serving, is an 'extraordinary and
compelling' reason justifying potential sentence reduction"); *United States v.
Brown*, 457 F. Supp. 3d 691, 703 (2020), 2020 U.S. Dist. LEXIS 87133, *21,
2020 WL 2091802 at *8 (S.D. Ia.) (finding extraordinary and compelling
reasons supported a sentence reduction based on "the manifest unfairness of
keeping a man in prison for decades more than if he had committed the same

crime today"); *United States v. Haynes*, 456 F. Supp. 3d 496 (2020), 2020 U.S. Dist. LEXIS 71021, 2020 WL 1941478, at *15 (E.D.N.Y. Apr. 22, 2020) (observing that the "sea change in § 924(c) law, coupled with the brutal impact of the original sentence [imposed under the older version of that statute], is an extraordinary and compelling circumstance warranting a reduction in sentence under the compassionate release statute"); *United States v. Young*, 458 F. Supp. 3d 838 (2020), 2020 U.S. Dist. LEXIS 37395, 2020 WL 1047815, at *8 (M.D. Tenn. Mar. 4, 2020) (finding "that the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A))"; *United States v. Urkevich*, No. 8:03CR37, 2019 U.S. Dist. LEXIS 197408, *8-9, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) (finding reduction warranted "by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed").

Mr. Wiggins now asks this Court to follow suit and conclude that the change in law since his sentencing that has taken him out of a mandatory life in prison sentence amounts to an extraordinary and compelling circumstance that warrants the Court's reconsideration of his life in prison sentence.

<u>18 U.S.C. § 3553(a) Sentencing Factors</u>

<u>Nature and Circumstances of the Offense</u>

According to the presentence report, Mr. Wiggins was part of a drug trafficking organization operating in Middlesex, North Carolina (DE 212 p 5). Mr. Wiggins would purchase cocaine from the organization and sell it to others (DE 212 p 5). Law enforcement officers became aware of the organization in 2009 through the use of a confidential informant (DE 212 p 5). They set up a series of controlled drug buys and intercepted wire communications between the organization's members (DE 212 pp 5-6).

In June 2012, officers responded to a domestic disturbance at Mr. Wiggins's residence (DE 212 p 7). Mr. Wiggins was not present but his girlfriend said she was afraid of him (DE 212 p 7). Mr. Wiggins drove by while officers were still there and they apprehended him (DE 212 p 7). The girlfriend gave permission to search the residence and the officers found 53 grams of crack cocaine, a rifle, ammunition, and $3,715 in cash (DE 212 p 7). Coconspirators subsequently made statements attributing more illegal drugs to Mr. Wiggins (DE 212 p 8). Mr. Wiggins was held responsible for 7.5 kilograms of cocaine and 53.14 grams of crack cocaine (DE 212 p 8). Although Mr. Wiggins went to trial and thus did not accept responsibility, his pro se compassionate release motion indicates he has taken his convictions seriously

and that he now takes responsibility for his offenses (DE 403 p 13). His rehabilitation efforts in federal prison support these contentions. He submitted exhibits along with his pro se motion to support this conclusion (DE 403-3-5).


History and Characteristics of the Defendant

Mr. Wiggins was born and raised in Middlesex, North Carolina (DE 212 p 14). He was one of 12 children (DE 212 p 14). He was reared by both parents, who were sharecroppers (DE 212 p 14). He and his siblings were required to help the family work the farm but their basic needs were met (DE 212 p 14). His parents used corporal punishment but they were not abusive (DE 212 p 14). According to a character letter written by a sibling, Mr. Wiggins suffered a brain injury as a child and developed a learning disability and has never been able to read or write (DE 403-3 p 2). Mr. Wiggins began using alcohol and marijuana at age 16 (DE 212 p 15). He dropped out of school in the 10th grade due to being ridiculed by other students for an inability to read (DE 212 p 15). He left home at age 17 but never left Middlesex (DE 212 p 14).

Mr. Wiggins produced two children in non-marital relationships in the early 1980s (DE 212 p 14). He then married a woman in the early 1980s and the marriage produced one child before resulting in divorce a year later (DE 212 p 14). In 1988, he attempted suicide by ingesting poison and was hospitalized

for a short period (DE 212 p 15).  He started using cocaine about the same time, (DE 212 p 15).   He has worked various jobs over the years when not incarcerated (DE 212 p 16).  His last job before federal incarceration was for the family's used car lot in Middlesex (DE 212 p 16).

Mr. Wiggins received 13 felony convictions and at least eight misdemeanor convictions before the federal prosecution (DE 212 pp 9-13). Most of the felony convictions were drug related (DE 212 pp 9-13).  It appears the longest prison sentence he previously served has been just shy of two years (DE 212 pp 9-13).  His last conviction before the federal prosecution was in June 2001 for which he received a 120-day sentence (DE 212 p 12).  He qualified for Criminal History Category V for federal sentencing (10 points) (DE 212 p 13).

Since going to federal prison, Mr. Wiggins has worked as a unit orderly (DE 403 p 14).  He asserts that his work evaluations have been good (DE 403 p 14).  He has taken numerous education courses in federal prison, including a drug education course and an anger management course (DE 403 p 14; DE 403-4).  He is working on obtaining his GED (DE 403 p 14).  He has agreed to participate in the inmate Financial Responsibility Program and appears to have a zero balance (DE 403-4).  He has been infraction-free in federal prison (DE 403 p 13; DE 403-4).

Mr. Wiggins's release plan is to return to Middlesex to live in a family home and work for the family's used car lot (DE 403 p 14). Numerous family members provided character letters on his behalf indicating that they will welcome him back with open arms and see to it that he is cared for (DE 403-5).

In his pro se motion, Mr. Wiggins wrote that he now feels deep regret and shame for his actions (DE 403 p 13). His rehabilitation efforts in prison support this. In sum, Mr. Wiggins has accepted responsibility for his crimes and has done quite a bit to improve himself since going to federal prison. Despite being given a life in prison sentence, he has not simply given up. Additionally, both of his parents and a sibling have passed away since he went to federal prison (DE 403-3). Although he has experienced mental health problems in the past, there is no evidence he currently experiences any mental or emotional issues (DE 403-4). The combination of his history and characteristics show he is unlikely to present a danger to the safety of other persons within the community if a sentence reduction were to result in his release from prison.

Needs of the Sentence to Reflect Seriousness, Deterrence, etc.

Mr. Wiggins received a life in prison sentence (DE 270). With an arrest date on the federal charges of 18 July 2012, he has served a few months shy of

10 years in federal prison, which is far more time than he has previously served in prison.  Had he not been subjected to a mandatory life in prison sentence, his statutory range would have been 10 years to life on Count One and 5 to 40 years in prison on Count Six.  His Guidelines range was 235 months (19.6 years) to 293 months (24.4 years), which is within the statutory range of both drug convictions without a § 851 enhancement.

Mr. Wiggins has asked the Court to grant him immediate release from prison (DE 403).  The undersigned believes the Court is unlikely to grant that request given that his Guidelines range is 235 months (19.6 years) to 293 months (24.4 years) and he has served less than 10 years in prison.  But even if this Court were to grant Mr. Wiggins a reduction in sentence to an amount of time within the Guidelines range on Counts One and Six, it would still satisfy the needs of the sentence to impose a sufficient but not greater than necessary amount of prison time to comport with the seriousness of his offenses.  Mr. Wiggins asserted in his pro se motion that all of his codefendants received less prison time than he did and the presentence report shows that some of them were responsible for amounts of cocaine approaching the amount Mr. Wiggins was held responsible for (DE 212 p 6).  It also appears that some of them played a far greater role in the conspiracy than did Mr. Wiggins.

Mr. Wiggins submits that a sentence reduction to at least a Guidelines range sentence on Counts One and Six still allows him to appreciate the seriousness of his offenses. He has been removed from his community for nearly 10 years. A Guidelines range sentence on those two counts coupled with a 10-year consecutive sentence on the gun conviction would still keep him away from his community for at least another 10 to 20 years, which would put him in his 70s or 80s when released. Add 10 years of supervised release and Mr. Wiggins will likely still be under federal supervision for the rest of his life even with a sentence reduction, assuming he does not into his 100s.

Kinds of Sentences Available

As explained above, if Mr. Wiggins had been convicted of these crimes today, he would not have faced a mandatory life in prison sentence. He would have likely received a prison sentence in the 20 to 25-year range on Counts One and Six followed by a 10-year sentence on the gun conviction. The disparity between his life sentence and similarly-situated defendants sentenced for similar crimes after the 2018 First Step Act changes to the Controlled Substances Act weighs in favor of reducing Mr. Wiggins's current sentences on Counts One and Six. Congress no longer deems a life in prison sentence mandatory for people with Mr. Wiggins's criminal history who violate the

Controlled Substances Act.  He prays the Court will conclude the same and give him some light to see at the end of tunnel.

Conclusion

Mr. Wiggins respectfully asks the Court to order a sentence reduction on Counts One and Six to a within Guidelines range sentence as if his Guidelines range had been calculated after 2018.

Respectfully submitted this 19th day of April, 2022.

/s/ Richard Croutharmel
Richard Croutharmel
Attorney for Defendant
5 West Hargett Street, Suite 706
Raleigh, NC 27601
Telephone: 919-755-1113
Fax:  919-755-1162
Email:  rcroutharmel@earthlink.net
NC Bar No. 29165

**CERTIFICATE OF FILING AND SERVICE**

I certify that I filed and served the foregoing **MEMORANDUM IN SUPPORT OF PRO SE MOTION FOR COMPASSIONATE RELASE/SENTENCE REDUCTION** electronically with Clerk of Court for the United States District Court for the Eastern District of North Carolina using the CM/ECF system which will send notice of such filing to the following registered CM/ECF users:  Joshua Royster, Assistant United States Attorney.

This <u>19th</u> day of <u>April</u>, 2022.

<u>/s/ Richard Croutharmel</u>
Richard Croutharmel
Attorney for Defendant
5 West Hargett Street, Suite 706
Raleigh, NC 27601
Telephone: 919-755-1113
Fax:  919-755-1162
Email:  rcroutharmel@earthlink.net
NC Bar No. 29165