IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CR-274-D-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ANTHONY WAYNE WIGGINS, | ) | |
| | ) | |
| Defendant. | ) | |

On March 24, 2022, Anthony Wayne Wiggins ("Wiggins" or "defendant") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 403]. On March 25, 2022, the court appointed counsel for Wiggins pursuant to 19-SO-3 [D.E. 404]. On April 19, 2022, Wiggins, through counsel, filed a memorandum in support [D.E. 411]. On August 15, 2022, the government responded in opposition [D.E. 418]. On August 26, 2022, Wiggins replied [D.E. 419]. As explained below, the court grants in part Wiggins's motion and reduces his life sentence on counts one and six to 300 months' imprisonment on counts one and six. All other aspects of the judgment remain the same.

I.

Wiggins and his associates conducted a large-scale drug trafficking operation in North Carolina. See Presentence Investigation Report ("PSR") [D.E. 212] ¶¶ 1–12, 18, 25, 27, 32–33. Wiggins was responsible for trafficking at least 7.5 kilograms of cocaine and 53.14 grams of cocaine base ("crack"). See id. ¶¶ 27, 33. Wiggins possessed a firearm in connection with his drug trafficking. See id.

On March 13, 2014, a jury found Wiggins guilty of conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine (count one), possession with intent to distribute 28 grams or more of cocaine base ("crack") (count six), and possession of a firearm and ammunition by a convicted felon (count seven). See [D.E. 196].

On September 3, 2014, at Wiggins's sentencing hearing, the court ruled on Wiggins's objections to the PSR and held that the enhancements under 21 U.S.C. § 851 applied to Wiggins. See Sent. Tr. [D.E. 293] 1–9. The court calculated Wiggins's total offense level to be 34, his criminal history category to be V, and his guideline range to be mandatory life imprisonment on counts one and six and 120 months' imprisonment on count seven. See id. at 8–9; [D.E. 271]. After considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Wiggins to life imprisonment on counts one and six and 120 months' concurrent imprisonment on count seven. See Sent. Tr. at 12–17; [D.E. 270]. Wiggins appealed. See [D.E. 273]. On September 29, 2015, the United States Court of Appeals for the Fourth Circuit affirmed Wiggins's conviction and sentence. See United States v. Gomez-Jimenez, 625 F. App'x 602, 603–05 (4th Cir. 2015) (per curiam) (unpublished); [D.E. 314, 315, 316]. Wiggins petitioned for writ of certiorari. On February 29, 2016, the Supreme Court denied certiorari. See Wiggins v. United States, 136 S. Ct. 1211 (2016).

On October 17, 2016, Wiggins moved to vacate his sentence under section 2255 and filed a memorandum in support. See [D.E. 335, 336]. On December 5, 2016, the government moved to dismiss Wiggins's section 2255 motion and filed a memorandum in support. See [D.E. 344, 345]. On May 5, 2017, the court granted the government's motion to dismiss, dismissed Wiggins's section 2255 motion, and denied a certificate of appealability. See [D.E. 355, 356]. Wiggins appealed. See [D.E. 357]. On October 3, 2017, the Fourth Circuit denied Wiggins's motion for a certificate of

2

appealability and dismissed Wiggins's appeal. See United States v. Wiggins, 698 F. App'x 121 (4th Cir. 2017) (per curiam) (unpublished); [D.E. 368, 369, 376, 377]. On May 21, 2018, the Supreme Court denied certiorari. See Wiggins v. United States, 138 S. Ct. 2035 (2018).

On March 24, 2022, Wiggins moved pro se for compassionate release. See [D.E. 403]. The government opposes the motion. See [D.E. 418].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the BOP has determined that the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 329–30 (4th Cir. 2021) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the United States waives a defense based on section 3582(c)(1)(A)'s timing requirements if the United

3

States does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's

4

age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1. "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. Id. at § 1B1.13 cmt. n.2.

On May 1, 2021, Wiggins applied to his warden for compassionate release. See [D.E. 403] 8; [D.E. 403-1] 2. On May 7, 2021, the warden denied his request. See [D.E. 403-1] 5. On May 21, 2021, Wiggins again applied to his warden for compassionate release. See id. at 6–7. On June 8, 2021, the warden again denied the request. See id. at 8. On June 11, 2021, Wiggins appealed. See id. at 11–12. On July 13, 2021, the BOP Regional Director denied the request. See id. at 10. On August 11, 2021, Wiggins appealed. See id. at 14–15. On October 1, 2021, the BOP Administrator of National Inmate Appeals denied the request. See id. at 16–17. The government has not invoked section 3582(c)(1)(A)'s exhaustion requirement. See [D.E. 418]. Therefore, the court assumes Wiggins has met the exhaustion requirement and addresses Wiggins's motion on the merits. See Muhammad, 16 F.4th at 130.

Wiggins seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, his age, his learning disability, his time served, his rehabilitative efforts, his supportive family and friends, his release plan, alleged unwarranted sentencing disparities with those who pleaded guilty and cooperated, and alleged unwarranted sentencing disparities due to changes under the First Step Act to the enhancements under section 851. See [D.E. 403, 403-4, 403-5]; [D.E. 411] 5–19; [D.E. 419].

5

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Wiggins states that he suffered a brain injury as a child and developed a learning disability. See [D.E. 419] 3. However, Wiggins does not allege that the BOP is not providing needed care or that he is unable to manage his learning disability in prison. Wiggins is 59 years old and states that his age places him at a heightened risk of serious infection from COVID-19. See [D.E. 419] 5–6. He has not provided the court any medical records, and his PSR states that he was in good health in 2014. See PSR ¶ 64. In any event, the wide availability of COVID-19 vaccines greatly diminishes the risk to Wiggins from COVID-19 whether he is in prison or not. See, e.g., United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of

6

COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"). If Wiggins has not been vaccinated, the availability of COVID-19 vaccines allows Wiggins to reduce his risk should he so choose. See United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished); United States v. Kennedy, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022) (unpublished); Broadfield, 5 F.4th at 803. Therefore, reducing Wiggins's sentence because of his age and risk factors and the general risk of COVID-19 in the prison environment does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for Wiggins's argument about alleged unwarranted sentencing disparities between Wiggins and those who pleaded guilty and cooperated, Wiggins does not offer any support for his claim. See [D.E. 403] 14. Unlike Wiggins, some of Wiggins's co-conspirators pleaded guilty and cooperated. See PSR ¶¶ 3, 5–10. There is nothing unwarranted about a sentencing disparity between a person who accepts responsibility, pleads guilty, and cooperates and a defendant who denies guilt and is convicted at trial. See United States v. Lopez, 860 F.3d 201, 217–18 (4th Cir. 2017); United States v. Allmendinger, 706 F.3d 330, 343–44 (4th Cir. 2013); United States v. Abu Ali, 528 F.3d 210, 263 (4th Cir. 2008) ("Although [a defendant has] every right to go to trial and claim innocence until proven guilty, . . . [once] proven guilty[, he] cannot avail himself of the benefits typically afforded those who reach plea agreements with the government and accept responsibility for their illegal conduct before going to trial.").

Wiggins also argues that the changes in the First Step Act to enhancements under 21 U.S.C. § 851 create an unwarranted sentencing disparity because he would not be subject to a mandatory

7

life sentence if he had been sentenced after the First Step Act's effective date of December 21, 2018. See [D.E. 403] 6; [D.E. 411] 6–10; [D.E. 419] 1–2. Specifically, under the First Step Act, if Wiggins were convicted of conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of cocaine, then he would have faced a mandatory minimum of 10 years and a statutory maximum of life. See 21 U.S.C. § 841(b)(1)(A)(ii). If he had a prior conviction for a serious drug felony or serious violent felony, then the mandatory minimum would be 15 years' imprisonment and the statutory maximum would be life imprisonment. See id. § 841(b). If he had two such prior convictions, then the mandatory minimum would be 25 years' imprisonment and the statutory maximum would be life imprisonment. See id.

Under the First Step Act, a "serious drug felony" means an offense "described in section 924(e)(2) of Title 18 for which (A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of commencement of the instant offense." 21 U.S.C. § 802(57); United States v. Skaggs, 23 F.4th 342, 343 (4th Cir. 2022). According to Wiggins, if he were prosecuted and sentenced today, he would not have any qualifying serious drug felonies, would not face mandatory life sentences, and would simply face an advisory guideline range on count one and six of 235 to 293 months' imprisonment and a statutory maximum of life imprisonment. See [D.E. 403] 6, 12; [D.E. 411] 6–9; [D.E. 419] 3–4. The United States does not disagree. The court will consider this non-retroactive, intervening change in sentencing law due to the First Step Act under the "other reasons" policy statement. See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022); McCoy, 981 F.3d at 284–88.

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Wiggins's age, his learning disability, his time served, his rehabilitative efforts, his supportive family and friends, his release plan, and changes under the First Step Act to

8

the enhancements under section 851 are together extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Ferguson, No. 21-6733, __ F.4th __, __, 2022 WL 17256572, at *4–5 (4th Cir. Nov. 20, 2022) (a defendant cannot use 18 U.S.C. § 3582(c)(1)(A) to collaterally attack his conviction and sentence, but can seek relief on his sentence due to a non-retroactive change in sentencing law under the First Step Act); McCoy, 981 F.3d at 284–88; United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

In deciding whether to reduce Wiggins's sentence, the court finds that Wiggins engaged in serious criminal behavior. See PSR ¶¶ 11–33. Between September 2011 and June 2012, Wiggins engaged in armed drug trafficking and purchased and distributed at least 7.5 kilograms of cocaine. See id. ¶ 33. On June 30, 2012, law enforcement officers responded to a domestic disturbance between Wiggins and a woman. See id. ¶ 27. The woman stated that she was afraid Wiggins might kill her if he returned to their house. See id. Officers searched the house and found 53.14 grams of cocaine base ("crack"), two Pyrex glass measuring cups with cocaine residue, which were used to convert cocaine to cocaine base ("crack"), a Hi-Point 9mm rifle, several boxes of .45 caliber and .40 caliber ammunition, and an empty box for a Hi-Point .45 handgun. See id. Notwithstanding the overwhelming evidence against Wiggins, Wiggins defiantly suggested at his sentencing hearing that he was not involved at all in drug dealing, that his lawyer conceded his guilt during the lawyer's opening statement, and that the Assistant U.S. Attorney had the trial transcript changed. See Sent. Tr. at 10–11. These statements are patently untrue and reflect Wiggins's abject failure to accept responsibility.

9

Case 5:12-cr-00274-D Document 420 Filed 12/06/22 Page 9 of 12

While federally incarcerated, Wiggins has worked as an orderly and has completed multiple courses and a drug treatment program. See [D.E. 403] 14; [D.E. 403-4] 2–7. Wiggins has not incurred any infractions while federally incarcerated. See [D.E. 403] 13; [D.E. 403-4] 3.

Wiggins is a lifelong criminal and drug dealer. See PSR ¶¶ 37–51; Sent. Tr. at 14–15. Before Wiggins engaged in the criminal conduct resulting in his federal convictions, Wiggins had been convicted in North Carolina state court of numerous offenses. Wiggins has felony convictions for uttering a forged instrument (two counts), possession with intent to sell marijuana (two counts), sale of marijuana, maintaining a vehicle, dwelling, or place for a controlled substance, possession with intent to sell cocaine, selling cocaine, selling marijuana, possession of cocaine, breaking and entering (two counts), and larceny after breaking and entering. See id. at ¶¶ 38–39, 42–47. Wiggins has misdemeanor convictions for soliciting for purpose of crime against nature, larceny (two counts), shoplifting or concealment of goods, reckless driving to endanger, and possession of drug paraphernalia. See id. at ¶¶ 37, 41, 48–51. Wiggins also has a poor record on probation. See id. at ¶¶ 41, 45. Wiggins's criminal conduct in this case and repeated convictions and poor behavior on probation show profound disrespect for the law.

The court must balance Wiggins's positive steps while federally incarcerated with his serious criminal conduct, his serious and extensive criminal history, his high likelihood of recidivism, his history of poor performance on probation, and the other section 3553(a) factors. Cf. Concepcion, 142 S. Ct. at 2403–04; Pepper, 562 U.S. at 480–81; United States v. Roane, 51 F.4th 541, 551–53 (4th Cir. 2022); High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; McCoy, 981 F.3d at 284–88; Martin, 916 F.3d at 398. Wiggins has a release plan that includes living with his family in Middlesex, North Carolina, and returning to employment at his family's used car business. See [D.E. 403] 14. As for Wiggins's argument about alleged unwarranted sentencing disparities if he

10

Case 5:12-cr-00274-D    Document 420    Filed 12/06/22    Page 10 of 12

were sentenced today, the court has considered the argument concerning Wiggins's life sentences on counts one and six, which were mandatory when the court imposed them but would not be mandatory today. See Ferguson, 2022 WL 17256572, at *4–5; McCoy, 981 F.3d at 284–88. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Wiggins's arguments, the government's response, and the need to punish Wiggins for his serious criminal behavior, to incapacitate Wiggins, to promote respect for the law, to deter others, to protect society, and to impose just punishment for his criminal behavior, the court grants in part Wiggins's motion for compassionate release and reduces his life sentence on counts one and six to 300 months' imprisonment on counts one and six. See, e.g., Concepcion, 142 S. Ct. at 2403–05; Chavez-Meza, 138 S. Ct. at 1966–68; Pepper, 562 U.S. at 480–81; Ferguson, 2022 WL 17256572, at *4–6; Roane, 51 F.4th at 551–53; Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; McCoy, 981 F.3d at 284–88; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); Martin, 916 F.3d at 398; United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished). All other aspects of the judgment remain the same.

III.

In sum, the court GRANTS in part defendant's motion for compassionate release [D.E. 403] and REDUCES his life sentence on counts one and six to 300 months' concurrent imprisonment on counts one and six. Defendant's sentence on count seven remains the same. All other aspects of the judgment also remain the same.

11

SO ORDERED. This 6 day of December, 2022.

                                                                                                                  *J. Dever*
                                                           JAMES C. DEVER III
                                                           United States District Judge